FILED
United States Court of Appeals
Tenth Circuit

March 25, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MICHAEL DRUM,

      Plaintiff - Appellant,

v.

NORTHRUP[1] GRUMMAN
SYSTEMS, a Delaware corporation,

      Defendant - Appellee.

No. 13-4034
(D.C. No. 2:11-CV-01086-CW)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **HOLLOWAY**, and **PHILLIPS**, Circuit Judges.

---

Plaintiff-Appellant Michael Drum appeals the district court's grant of

summary judgment in favor of Defendant-Appellee Northrop Grumman Systems

Corp. Drum v. Northrup Grumman Systems, No. 2:11-cv-01086-CW (D. Utah

Feb. 5, 2013). In this removal case, Mr. Drum, while an employee of Air

Liquide, slipped on ice while delivering liquid nitrogen for Air Liquide to

Northrop Grumman in Salt Lake City, Utah. The district court granted summary

---

[1] The caption in this case misspells Northrop. We retain the misspelling
only to be consistent with the filings before this court and the district court.

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

judgment in favor of Northrop Grumman, finding that Mr. Drum failed to establish that Northrop Grumman created the icy conditions and that his claim was properly covered by workers' compensation. Aplt. App. 122-23. The court ruled on the motion from the bench and later issued a summary order adopting the discussion. Aplt. App. 109. On appeal, Mr. Drum argues that the district court erred by (1) not addressing his theory of direct negligence under Magana v. Dave Roth Constr., 215 P.3d 143 (Utah 2009), Aplt. Br. 8; (2) improperly relying on Privette v. Superior Court, 854 P.2d 721 (Cal. 1993), Aplt. Br. 6, 11; and (3) failing to find that Northrop Grumman retained control of the Air Liquide area sufficient to impose liability. Aplt. Br. 14. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

Background

On a rainy night in December 2010, Mr. Drum was delivering liquid nitrogen to Air Liquide tanks at Northrop Grumman when he stepped over an equipment line, slipped on ice, and strained his lower back. Aplt. App. 59-60. Although Mr. Drum received workers' compensation from Air Liquide, Aplt. App. 115, he brought suit against Northrop Grumman for negligence, Aplt. App. 26.

The undisputed facts surrounding the accident include that (1) snow and ice often accumulate around Air Liquide's liquid-nitrogen tanks, especially in

December, making the area slippery; (2) Mr. Drum noticed that it was slippery the evening of the accident when he conducted a walk-through prior to filling the tanks; (3) Mr. Drum knew about the equipment line he stepped over because he had made deliveries with it there and knew to watch out for it; and (4) Mr. Drum likely had ice on the bottom of his shoe when he stepped over the line from the concrete pad onto the asphalt and lost his balance. Aplt. App. 62-63, 65. Mr. Drum also admits that Air Liquide owns, installed, and maintains the liquid nitrogen equipment at the accident site and that Northrop Grumman does not supervise nor schedule Air Liquide's deliveries to these tanks. Aplt. App. 64-65. Mr. Drum "alleges and avers" that two Air Liquide entities are involved: the one for whom he works, which supplies the liquid nitrogen, and another, Air Liquide Field Services, which owns the equipment. Aplt. App. 64, 120; Aplt. Br. 4.

Based primarily on Mr. Drum's deposition testimony, Northrop Grumman moved for summary judgment, arguing that even though it owned the accident site, nothing established it as the possessor sufficient to impose liability; rather, Mr. Drum's sole remedy was a workers' compensation claim against Air Liquide. Aplt. App. 40-41. In support, Northrop Grumman relied on Hale v. Beckstead, 116 P.3d 263, 269 (Utah 2005), which recognizes that under Sections 343 and 343A of the Restatement (Second) of Torts, a landowner's[2] duty does not extend

_____

[2] Confusion arises in this case from the imprecise use of the terms "landowner" and "possessor" by both the parties and in Utah caselaw. For example, Hale often refers to *landowner* liability despite the fact that it was

- 3 -

to an open and obvious condition like the one that occurred here, and that unlike

Hale, Northrop Grumman did not install, own, or maintain the equipment at issue.

Aplt. App. 44-45. Mr. Drum responded by arguing that Northrop Grumman, as

the possessor of the land, owed him a duty, that Air Liquide retained no control

over the land, and that the open and obvious doctrine did not bar recovery

because Northrop Grumman knew that the only access to the tanks was via the

snow-covered asphalt pad. Aplt. App. 66-72.

Following the parties' briefing on the summary judgment motion, Mr.

Drum alerted the district court to supplemental authority: Berrett v. Albertsons

Inc., 293 P.3d 1108 (Utah Ct. App. 2012), cert. granted, 304 P.3d 469 (Utah May

13, 2013) (No. 20130165) (addressing a grocery store's liability when a patron

fell into a parking lot manhole left open by an independent contractor servicing

---

addressing *possessor* liability under Sections 343 and 343A of the Restatement (Second) of Torts. See, e.g., Hale, 116 P.3d at 268 ("Under section 343, if a *landowner* 'should expect that [an invitee] will ... fail to protect [himself] against [a dangerous condition],' the *landowner* must exercise reasonable care to protect him.") (citing § 343(b), (c)) (emphases added); compare with Restatement (Second) of Torts, §§ 343, 343A (addressing dangerous conditions in regard to a "*possessor* of land") (emphasis added). The Restatement defines "possessor" as "a person who is in occupation of the land with intent to control it." Restatement (Second) of Torts, § 328E(a); see also Stevens v. Colorado Fuel and Iron, 469 P.2d 3, 5 (Utah 1970) (recognizing the distinction between a landowner and a possessor as defined by § 328E of the Restatement). In Hale, the possessor was also the landowner, Hale, 116 P.3d at 265; thus, the distinction was unnecessary even if the language was less than precise. However, the distinction is critical here. Based on the plain language of §343, §343A, and §328E as recognized by the Utah Supreme Court, we read Hale as applying only to possessor liability and not landowner liability.

the grocery store's drains).  Aplt. App. 87.

At oral argument before the district court, Mr. Drum clarified that his negligence claim was based on the peculiar risk doctrine, the general tort duty owed by a business owner to an invitee, and direct negligence under Magana. Aplt. App. 113-14, 119.  When asked about the two Air Liquide entities, Mr. Drum could not reference any evidence—other than his own say so—that an entity other than his employer owned and maintained the equipment.  Aplt. App. 120-21.

The district court ruled in Northrop Grumman's favor, explaining that based on discussions of the peculiar risk doctrine in Berrett, Thompson v. Jess, 979 P.2d 322 (Utah 1999), and Privette, Mr. Drum's injuries resulted from the work he was doing for his employer, Air Liquide, and as such, his injuries were covered by workers' compensation; thus, he could not also recover tort damages against Northrop Grumman.  Aplt. App. 121-23.

Mr. Drum timely appeals.

## Discussion

Mr. Drum presents three challenges to the district court's grant of summary judgment: (1) the district court failed to address his theory of direct negligence under Magana; (2) the district court impermissibly and sua sponte relied on Privette to bar him from suing Northrop Grumman; and (3) Northrop Grumman

was liable for his injuries because it retained possession and control of the ground underneath the Air Liquide equipment. Aplt. Br. 8-17. Northrop Grumman argues that Mr. Drum failed to preserve any argument that it had a duty to Mr. Drum, but should the court decide otherwise, the undisputed evidence supports the legal conclusion of no duty, or, alternatively, no breach of duty due to the obvious snow danger. Aplee. Br. 7-8.

In diversity cases, we apply the substantive law of the forum state to the underlying claims but review de novo the grant of summary judgement under federal law. Stickley v. State Farm Mut. Auto. Ins. Co., 505 F.3d 1070, 1076 (10th Cir. 2007). We review the evidence and its reasonable inferences in the light most favorable to the non-movant, but summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We may affirm on any grounds in the record sufficient to permit legal conclusions, even if the grounds were not relied upon by the district court. Stickley, 505 F.3d at 1076.

1. Magana is Inapplicable

Magana was raised by Mr. Drum at oral argument before the district court. Aplt. App. 119. Mr. Drum argues that the district court failed to address his theory that Northrop Grumman was directly negligent in failing to clean the ice and snow on the ground underneath Air Liquide's equipment as established in Magana. Aplt. Br. 8. Mr. Drum argues that to the extent Northrop Grumman

- 6 -

contributed to the hazardous snow and ice conditions of the premises, it should be held liable. Id. at 11. Though it is passing strange that Northrop Grumman never discusses Magana in its response brief (after all, it is the first point of Mr. Drum's brief in chief), the district court apparently rejected its application, and we will proceed to the merits. That said, nothing in the record supports that Northrop Grumman—rather than Air Liquide—was directly responsible for the ice accumulation.

In Magana, the employee of a subcontractor was injured when a load of trusses fell on him as it was being hoisted by crane from a truck. Magana, 215 P.3d at 146. The injured worker sued the general contractor that had hired the subcontractor under two theories: vicarious liability for the subcontractor's conduct based on the retained control doctrine and direct negligence, because the general contractor had helped the subcontractor rig the trusses. Id. at 146-47. The Utah Supreme Court upheld the grant of summary judgment in favor of the general contractor under the first theory, concluding that the general contractor did not actively participate in the injury-causing activity such that it retained control of the unloading. Id. at 148-49. However, the court reversed on the second theory, finding that a question of fact remained as to the general contractor's direct negligence because the worker testified that he observed the general contractor helping rig the trusses that fell and caused the injury. Id. at 152. Consequently, the Magana court held that "[o]nce an employer goes beyond

mere direction or control of the contractor's work and directly acts in such a way that causes an injury, the employer may be liable for its own direct negligence." Id. at 151.

The facts of this case are wholly different. Unlike Magana, no evidence supports the assertion that Northrop Grumman directly contributed to the ice buildup. Rather, Mr. Drum admits that Air Liquide owns and maintains all of the liquid nitrogen equipment and that the nature of liquid nitrogen being stored outside in tanks, especially on a cold, December evening, often results in snow and ice accumulating on the surrounding ground. Accordingly, Magana does not suggest a different result.

Mr. Drum also argues that the failure to apply Magana provides Northrop Grumman immunity from suit "for which it has paid no price," in contravention to Utah law allowing the allocation of fault to negligent third parties. Aplt. Br. 10 (citing Sullivan v. Scoular Grain Co. of Utah, 853 P.2d 877 (Utah 1993) (superceded by statute on other grounds as recognized in Anderson v. United Parcel Service, 96 P.3d 903, 907 (Utah 2004)). However, the district court did not grant Northrop Grumman "immunity," as Mr. Drum alleges. It merely refrained from imposing tort liability where none was established. We also note that Mr. Drum's reliance on Sullivan is misplaced, as Sullivan recognizes that a party dismissed from a negligence suit based on lack of fault as a matter of law cannot be included in apportionment of fault. Sullivan, 853 P.2d at 878, 884.

2.      Privette Controls Through Thompson v. Jess

Mr. Drum also challenges the district court's grant of summary judgment by arguing that it impermissibly and sua sponte relied on Privette because (1) Northrop Grumman is a negligent landowner; (2) Privette will discourage workplace safety by allowing employers to escape liability; and (3) Mr. Drum worked for a different Air Liquide entity than the one that owns the tanks. Aplt. Br. 11-14. Northrop Grumman argues that Mr. Drum failed to preserve the Privette issue, and, at any rate, the district court merely was commenting upon supplemental authority. Aplee. Br. 32-34;

First, Mr. Drum's allegation that the district court sua sponte relied on Privette is inaccurate. The district court referenced Privette in regard to the peculiar risk doctrine; a doctrine that Mr. Drum brought to the attention of the court by filing Berrett as supplemental authority. Because the issue of the peculiar risk doctrine, including Privette, was before the district court, and the district court relied on it for its ruling, we also reject Northrop Grumman's argument that the Privette issue was not preserved for appellate review. See United States v. Hernandez-Rodriguez, 352 F.3d 1325, 1328 (10th Cir. 2003); Trujillo v. Cyprus Amax Minerals Co. Ret. Plan Comm., 203 F.3d 733, 736 (10th Cir. 2000) (review of a district court's legal conclusions is plenary).

Second, we agree with the district court that Privette, as recognized in Thompson, limits Mr. Drum's injury to a workers' compensation claim.

In Privette, the California Supreme Court provided a thorough analysis of the intersection of workers' compensation and the peculiar risk doctrine, an exception to the general rule of nonliability for a landowner who hires an independent contractor to perform inherently dangerous work as recognized in Sections 413, 416, and 427 of the Restatement (Second) of Torts. Privette, 854 P.2d at 691, 693; see also Thompson, 979 P.2d at 329. Ultimately, the Privette court concluded that when the person injured by negligently performed contract work is one of the contractor's own employees—rather than an innocent bystander—then the injury is compensable under worker's compensation; therefore, the peculiar risk doctrine should not apply because it would allow recovery for the same injuries against the person who hired the contractor in contravention of tort principles. Privette, 854 P.2d at 696.

Relying on Privette in part, the Utah Supreme Court reached the same conclusion. Thompson, 979 P.2d at 329. The Thompson court explained that an employer often hires an independent contractor precisely because of that contractor's expertise; to then require the employer to anticipate what might be inherently dangerous to the contractor's employees puts the employer in an "untenable position" of trying to foresee risks that are often beyond its expertise. Thompson, 979 P.2d at 330.[3]

_____

[3] Although Mr. Drum also brought Berrett to the district court's attention, the case is simply inapplicable. Berrett cites Thompson when discussing the peculiar risk doctrine. Berrett, 293 P.3d at 1116. However, Berrett involves an

Here, the district court questioned Mr. Drum and confirmed that Mr. Drum was injured while working for Air Liquide, a entity different from Northrop Grumman; that Northrop Grumman did not maintain any of the Air Liquide equipment at the accident site; and that Mr. Drum received workers' compensation for his injuries. Aplt. App. 119-121. The district court then concluded based on Privette, Berrett, and Thompson that the peculiar risk doctrine did not apply because Mr. Drum worked for the independent contractor that created the risk, and he received workers' compensation. Aplt. App. 123.

We are not persuaded by Mr. Drum's argument that Privette is inapplicable because Northrop Grumman was a negligent landowner when nothing in the record establishes such. We also are not persuaded that the district court's ruling will discourage workplace safety, as Mr. Drum presents no evidence that Northrop Grumman failed to maintain safe working conditions in an area containing equipment owned and maintained by Air Liquide. Insofar as Mr. Drum's third argument that he worked for a different Air Liquide entity, nothing in the record provides evidentiary support for such a conclusion.

3.     Northrop Grumman Had No Duty to Mr. Drum

Finally, Mr. Drum argues that Northrop Grumman had a duty to keep the accident site clear from ice and snow as the possessor of the area because (1) it

---

injury to an innocent bystander and not the employee of an independent contractor. Id. at 1110.

- 11 -

owned of the concrete pad and surrounding asphalt parking lot, (2) the area was fenced, (3) a security guard protected the area and allowed Mr. Drum to enter in order to fill the tanks, (4) nothing establishes that Air Liquide was required to remove snow and ice, (5) the legal cause of his injuries was the snow and ice and not his filling the tanks, and (6) under Section 422 of the Restatement (Second) of Torts, Northrop Grumman resumed possession of the land after Air Liquide installed its equipment. Aplt. Br. 14-17. We reject Northrop Grumman's argument that Mr. Drum never raised the issue of whether it had a duty, but agree that it had no duty on this record.

As Utah has long recognized, "[t]he assertion of mere legal title . . . [is] an insufficient basis upon which to predicate the duty plaintiffs assert . . . . The duty claimed is owed by the possessor of land. The possessor of land is a person who is in occupation of the land with intent to control it." Stevens v. Colorado Fuel and Iron, 469 P.2d 3, 5 (Utah 1970) (citing Section 328E of the Restatement (Second) of Torts).

The undisputed facts of this case show that Air Liquide occupied the accident site with the intent to control it sufficient to make it—and not Northrop Grumman—the possessor. Air Liquide not only installed and owns the equipment that caused Mr. Drum's injury, it also maintains that equipment, and Northrop Grumman does not supervise or schedule deliveries to the fenced equipment site. Although a Northrop Grumman security guard allows access to Air Liquide

employees, nothing in the record establishes that either the fence or the security guard is used by Northrop Grumman for purposes of possession. Rather, Mr. Drum admitted in his deposition testimony that the area is hazardous and that only Air Liquide employees are allowed around the tanks. Aplt. App. 51.

Although Mr. Drum argues that owning the concrete pad and asphalt parking lot underneath Air Liquide's equipment create possession, such passive possession does not constitute control sufficient to impose liability. While Mr. Drum is correct in noting that nothing in the record establishes that Air Liquide was required to remove the snow and ice, we note that nothing in the record establishes that Northrop Grumman was required to do so in a hazardous area under the possession and control of its independent contractor. Thus, as the landowner but not the possessor, Northrop Grumman had no duty to Mr. Drum as an invitee. See Tallman v. City of Hurricane, 985 P.2d 892, 894 (Utah 1999) ("[W]ithout a duty, there can be no negligence as a matter of law, and summary judgment is appropriate.") (internal quotation marks and citation omitted).

In regard to Mr. Drum's remaining arguments, we conclude that (1) even though the failure to remove snow and ice may be the legal cause of Mr. Drum's injuries, this legal cause does not somehow transform Northrop Grumman into a possessor; and (2) Section 422 of the Restatement (Second) is inapplicable, as it addresses liability for a possessor who entrusts an independent contractor to build a structure on the land it possesses. Restatement (Second) of Torts, § 422. No

such scenario occurred here, as Air Liquide did not simply install the equipment on behalf of Northrop Grumman but continues to operate the tanks.[4]

Having determined that summary judgment was correct as a matter of law, we need not address Northrop Grumman's alternative theory that the ice and snow were an open and obvious condition.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

---

[4] Our conclusion that Northrop Grumman is not a possessor is consistent with the recently released Utah Supreme Court decision filed by Mr. Drum with this court under Fed. R. App. P. 28(J) motion: Hill v. Superior Prop. Mgmt. Servs., No. 20120428, 2013 WL 5587843, at *4 (Utah Oct. 11, 2013) (defining possession as including substantial control).